DocuSign Envelope ID: F057CB5A-E543-4096-A58A-25715EFDE004

**STARK & STARK**                                   **ATTORNEY FOR PLAINTIFFS**
By: CARIN O'DONNELL, ESQUIRE
Attorney I.D. # 84230
777 Township Line Road, Suite 120
Yardley, PA 19067
Phone  (267) 907-9600
Fax      (267) 907-9659

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YEHUDA RUBIN and NECHAMA SANDLER, | : | |
| Individually and as Husband and Wife | : | |
| 1301 Southampton Boulevard | : | |
| Toms  River,  NJ  08757 | : | |
| | : | |
| Plaintiffs, | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| TOWN AND COUNTRY ENERGY | : | |
| CORPORATION | : | |
| 439 Rutledgedale Road | : | |
| Equinunk, PA 18417 | : | |
| | : | |
| & | : | |
| | : | |
| BRADFORD WHITE CORPORATION | : | |
| 725 Talamore Drive | : | |
| Ambler, PA 19002 | : | |
| | : | |
| & | : | |
| | : | |
| RHEEM MANUFACTURING COMPANY | : | |
| 100 Abernathy Rd, Ste 1700 | : | |
| Atlanta GA, 30328 | : | |
| | : | |
| & | : | |
| | : | |
| HONEYWELL INTERNATIONAL INC. d/b/a, | : | |
| a/k/a Honeywell Inc. | : | |
| 512 Virginia Drive | : | |
| Fort Washington, PA 19034 | : | |
| | : | |
| & | : | |

ENGINEERED CONTROLS INTERNATIONAL,    :
INC d/b/a, a/k./ ECII; ECI; Rego; Rego Company;    :
Rego Products and/or Rego-Goddard Products    :
100 Rego Drive    :
Elon, NC 27244    :
    :
                 &amp;    :
    :
ENGINEERED CONTROLS INTERNATIONAL,    :
LLC d/b/a, a/k/a ECII; ECI; Rego; Rego Company;    :
Rego Products and/or Rego-Goddard Products    :
100 Rego Drive    :
Elon, NC 27244    :
    :
                 &amp;    :
    :
Dan Winters individually and d/b/a, a/k/a    :
DR Winters Gas Heating & Appliance Service    :
923 Texas Palmyra Highway    :
Honesdale, PA 18431    :
    :
                 &amp;    :
    :
DR Winters Gas Heating & Appliance Service    :
923 Texas Palmyra Highway    :
Honesdale, PA 18431    :
    :
    :
    :
        Defendants    :

---

## CIVIL ACTION COMPLAINT

## PARTIES

1.      Plaintiffs, Yehuda Rubin and Nechama Sandler are individuals, and husband, and

wife who at the time of the incident resided at103 A Southfield Drive, Lakewood, NJ 08701 and

currently reside at 1301 Southampton Boulevard, Toms River, NJ 08757.

2.      At all times material hereto, Defendant, Town and Country Energy Corporation, (hereinafter "Town and Country") was a corporation licensed to do business in the Commonwealth of Pennsylvania with a registered corporate address of 439 Rutledgedale Road, Equinunk, PA 18417.

3.      Defendant Town and County is a distributor of propane, installs propane lines and water heaters, and provides repair, replacement, installation, inspection and maintenance services to water heaters and propane lines.

4.      At all times material hereto, Defendant, Bradford White Corporation d/b/a, a/k/a Bradford White Water Heaters (hereinafter "Bradford White") was a corporation licensed to do business in the Commonwealth of Pennsylvania with a registered corporate address of 725 Talamore Drive, Ambler, Montgomery County, PA 19002.

5.      Defendant Bradford White is a manufacturer and distributor of hot water heaters for commercial and residential use.

6.      At all times material hereto, Defendant, Rheem Manufacturing Company (hereinafter "Rheem"), was a corporation licensed to do business in the Commonwealth of Pennsylvania, with a principal place of business located at 1100 Abernathy Road NE, Suite 1700, Atlanta, GA 30328.

7.      Defendant Rheem is a manufacturer and distributor of hot water heaters for commercial and residential use.

8.      At all times material hereto, Defendant Honeywell International Inc., d/b/a, a/k/a Honeywell; Honeywell Inc. (hereinafter "Honeywell"), was a corporation licensed to do business in the Commonwealth of Pennsylvania with a principal place of business of 512 Virginia Drive, Fort Washington, Montgomery County, PA 19034.

DocuSign Envelope ID: F0E7CB5A-E543-4096-A581-2371F8EDE004

9.     Defendant Honeywell is a manufacturer and provider of, among other products, regulators that are installed onto hot water heaters.

10.     At all times material hereto, Defendant Engineered Controls International, Inc. d/b/a, a/k/a, ECII; ECI; Rego; Rego Company; Rego Products and/or Rego-Goddard Products, (hereinafter "ECI") was a corporation licensed to do business in the Commonwealth of Pennsylvania with a principal place of business of 100 Rego Drive, Elon, NC 27244.

11.     At all times material hereto, Defendant Engineer Controls International, LLC d/b/a, a/k/a Engineered Controls International, Inc.; ECII; ECI; Rego; Rego Company; Rego Products and/or Rego-Goddard Products, (hereinafter "Engineered Controls") was a limited liability company registered to do business in the Commonwealth of Pennsylvania with a principal place of business of 100 Rego Drive, Elon, NC 27244.

12.     Defendants ECI and Engineered Controls manufactured and distributed second stage regulators which regulated propane flow from a yard line to the water heater.

13.     Upon information and belief, Defendant Dan R. Winters individually and d/b/a, a/k/a DR Winters Gas Heating and Appliance Service (hereinafter "Dan Winters") is an individual and resident of the Commonwealth of Pennsylvania with an address of 923 Texas Palmyra Highway, Honesdale, Wayne County, PA 18431.

14.     Upon information and belief, Defendant Dan Winters is in the business of installing and servicing commercial and residential gas appliances.

15.   Upon information and belief, Dan Winters is a sole proprietor of DR Winters Gas Heating & Appliance Services (hereinafter "DR Winters") and does business at 923 Texas Palmyra Highway, Honesdale, Wayne County, PA 18431.

16.     Upon information and belief, and to the extent that they are separate, Defendant

DR Winters Gas Heating & Appliance Service (hereinafter "DR Winters") is a business entity

licensed to do business in the Commonwealth of Pennsylvania with a principal place of

business at 923 Texas Palmyra Highway, Honesdale, Wayne County, PA 18431.

16.     Camp Raninu was Plaintiff, Yehuda Rubin's employer at the time of this incident.

17.     Camp Raninu is a summer youth overnight camp located at 62 Raninu Road,

Honesdale, PA 18431.

## JURISDICTION AND VENUE

18.     There is complete diversity of citizenship and the amount in controversy in this

matter exceeds the sum of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS.

19.     Jurisdiction and Venue are properly placed with this Honorable Court pursuant to

28 USC §1332 and §1391, since the site of the underlying negligence and the negligent acts

and/or omissions of the Defendants occurred primarily at Camp Raninu, which is located with

the Middle District of Pennsylvania.

## FACTUAL BACKGROUND

20.     Camp Raninu is a summer overnight camp for youths.

21.     Youth campers come during summertime and stay overnight in cabins at Camp

Raninu's campground located at 62 Raninu Road, Honesdale, PA 18431.

22.     The campers stay in cabins that have water heaters located underneath in crawl

spaces.

23.     Specifically, at the time of this within incident, there were two water heaters

located underneath Cabin #10.

DocuSign Envelope ID: F0F7CB5A-FE43-4096-A581-2371F8EDE004

24.    At the time of the incident herein, underneath Cabin #10 was a Bradford White 50 Gallon Water Heater manufactured and distributed by Defendant Bradford White with model number RG250T6X and serial number TD43295322.

25.    At the time of the incident herein, underneath Cabin #10 was a water heater manufactured and distributed by Defendant Rheem with a partial serial number of A231812175.

26.    A component of both water heaters underneath Cabin #10 were propane regulators manufactured and distributed by Defendant Honeywell.

27.    The propane regulators manufactured and distributed by Defendant Honeywell controlled the flow and reduced the gas pressure of the propane flowing into the water heater.

28.    The water heaters are used to heat water to allow the campers to have hot showers, baths, and to use the hot water for other needs.

29.    At all times material hereto, Plaintiff Yehuda Rubin was employed as a maintenance person for Camp Raninu and was in the course and scope of his employment at the time of this incident.

30.    Defendant Town and Country, and/or Dan Winters, and/or DR Winters provides repairs, replacements, installation, inspections and maintenance services to propane lines and lines to water heaters located at Camp Raninu's campground.

31.    Defendant Town and Country has provided repairs, replacements, installation, inspections and maintenance services to lines of water heaters and propane lines at Camp Raninu for at least five (5) years prior to this incident.

32.    Prior to the within incident, Defendant Town and Country had installed a propane tank at Camp Raninu.

33.    Said propane tank is located approximately fifty (50) yards away from Cabin #10 located at Camp Raninu.

34.    Prior to the within incident, Defendant Town and Country had installed a propane yard line (hereinafter "yard line").

35.    In the alternative, Defendant Town and Country, and/or Dan Winters, and/or DR Winters had repaired, replaced, inspected, leak-tested, pressure-tested and/or maintained the yard line prior to Plaintiffs' incident.

36.    Upon information and belief, the yard line ran from a regulator of the propane tank, beneath ground, under the roadway which is located behind Cabin #10 (hereinafter "roadway").

37.    Prior to the within incident, each cabin located along the roadway had a service lateral/connection to the yard line.

38.    Prior to the within incident, each cabin had a second stage regulator that was connected to the yard line and regulated propane directly from the yard line.

39.    It is averred, upon information and belief, that second stage regulators that were installed were distributed and manufactured by Defendants ECI and Engineered Controls.

40.    Approximately one and one-half (1½) years prior to the Plaintiffs' incident, a prior employee was injured when he lit a water heater in the crawl space underneath Cabin #10.

41.    Specifically, that employee was in the crawl space of Cabin #10 and when he went to ignite the water heater there was an explosion causing severe burns to that employee.

42.    Defendant Town and Country, and/or Dan Winters and/or DR Winters had actual and/or constructive notice of this prior incident.

DocuSign Envelope ID: F0E7CB5A-EE43-4096-A581-2571E8FDE004

43.    Subsequent to this prior incident, Defendant Town and Country, and/or Dan Winters and/or DR Winters came to Camp Raninu and did inspect, repair, replace, correct, service and/or maintain any issue that may have caused this prior explosion at Cabin #10.

44.    In the alternative, Defendant Town and Country, and or Dan Winters, and/or DR Winters came to Camp Raninu prior to Plaintiffs' incident, and did not inspect, repair, leak/pressure test, replace, correct, service and/or maintain any issue that may have caused this prior explosion at Cabin #10.

45.    Specifically, after the prior incident, Defendant Town and Country, and/or Dan Winters and/or DR Winters failed to conduct a leak test of the entire LP/propane system, which is required by NFPA 58, after an interruption in service occurs.

46.    After the prior incident, Defendant Town and Country and/or Dan Winters and/or DR Winters did not replace the second stage regulator in Cabin #10.

47.    Upon information and belief, after this prior incident, Defendant Town and Country and/or Dan Winters and/or DR Winters represented to Camp Raninu that there was no issue or concern regarding propane distribution at and/or to Cabin #10.

48.    Upon information and belief, after the above-referenced prior incident, but before Plaintiffs' incident, Defendant Town and Country and/or Dan Winters and/or DR Winters replaced at least one of the water heaters underneath Cabin #10.

49.    Defendant Town and Country and/or Dan Winters and/or DR Winters knew or should have known after this prior incident that there was an issue regarding propane distribution to or from Cabin #10 that could cause serious injury.

50.    Thereafter, approximately three weeks prior to the Plaintiffs' incident, Camp Raninu contacted Defendant Town and Country to inspect, repair, replace, correct, service and/or

maintain any issues concerning water heaters and propane distribution at the Camp and specifically, Cabin #10.

51.     At or around that time, on June 9, 2020, Defendant Town and Country came to Camp Raninu and did inspect, repair, replace, correct, service and/or maintain any issue concerning water heaters and propane distribution at the Camp and specifically, Cabin #10.

52.      In the alternative, on June 9, 2020, Defendant Town and Country came to Camp Raninu and did not inspect, repair, replace, correct, service and/or maintain any issues concerning water heaters and propane distribution at the Camp and specifically, Cabin #10.

53.     Specifically, Defendant Town and Country found a leak present but did not determine where the leak was coming from and therefore failed to conduct a leak test of the entire Liquified petroleum (hereinafter "LP") propane system, which is required by NFPA 58, after an interruption in service occurs.

54.     Upon information and belief, Defendant Town and Country represented to Camp Raninu that the issue concerning no water was inspected, repaired, replaced, corrected, serviced and/or maintained.

55.     Defendant Town and Country knew or should have known there was an issue regarding the propane distribution to Cabin #10 that could cause serious injury again at this time.

56.     In the alternative, upon information and belief, Defendants DR Winters and Dan Winters, following the prior incident and before Plaintiffs' incident also provided inspection, repair, and maintenance services for Camp Raninu's gas appliances, including the water heaters underneath Cabin #10, with Defendant Town and Country.

57.     Upon information and belief, Defendants DR Winters and Dan Winters had, on several occasions following the prior incident and before Plaintiffs' incident, the opportunity to

DocuSign Envelope ID: F0F7CB5A-F543-4096-AF81-8771F55DE004

and in fact did inspect, repair, replace, correct, service, and/or maintain the water heaters and propane lines underneath Cabin #10.

58.     Upon information and belief, prior to Plaintiffs' incident Defendants DR Winters and Dan Winters came to Camp Raninu and did not inspect, repair, replace, correct, service and/or maintain any issues concerning water heaters and propane distribution at the Camp and specifically, Cabin #10.

59.     Upon information and belief, Defendants DR Winters and Dan Winters also failed to conduct a leak test of the entire Liquified petroleum (hereinafter "LP") propane system, which is required by NFPA 58, after an interruption in service occurs.

60.     Upon information and belief, Defendants DR Winters and Dan Winters knew or should have known there was an issue regarding propane distribution to the hot water heaters underneath Cabin #10.

61.     On or about July 16, 2020, Plaintiff, Yehuda Rubin was in the course and scope of his employment for Camp Raninu.

62.     At that time, there was a complaint by the youth campers that there was no hot water in Cabin #10.

63.     On July 16, 2020, Plaintiff, Yehuda Rubin as part of his employment, went to the crawl space of Cabin #10 and noticed a pilot was out on the water heater.  Plaintiff went to ignite the pilot of a water heater under Cabin # 10. Plaintiff Yehuda Rubin pressed the ignite button and upon doing the same, there was an explosion. The force of the explosion not only caused structural damage to Cabin #10, but fire proceeded out of the crawl space, outside of the cabin, and severely burned Nechama Sandler. Nechama Sandler was sitting in a golf cart outside of Cabin #10 waiting for her husband to do his work.

64.     After Plaintiffs' incident, the yard line was abandoned by Defendant Town and Country and/or Dan Winters and/or DR Winters and another propane distribution configuration was put in place.

65.     After Plaintiffs' incident, the direct connections from each cabin to the yard line were abandoned by Defendant Town and Country and/or Dan Winters and/or DR Winters except for a direct connection that runs for the propane tank to Cabin #10.

66.     After Plaintiffs' incident, the propane connections from each cabin were linked in a series, one cabin to another in a "daisy chain configuration", in lieu of the abandoned yard configuration by Town and Country, and/or Dan Winters and/or DR Winters.

67.     At the time of Plaintiffs' incident, the second stage regulator, manufactured by Defendants ECI and Engineered Controls, on Cabin #10 was the same that had been there at the time of the incident, approximately one year prior.

68.     After Plaintiffs' incident, the second stage regulator, manufactured by Defendants Rego and Engineered Controls, in Cabin #10 was replaced by Town and Country, and/or Dan Winters and/or DR Winters.

69.     Upon information and belief, after Plaintiff's incident, Defendants Town and County and/or DR Winters and/or Dan Winters removed the damaged water heaters and propane lines from underneath Cabin #10 and installed new water heaters.

70.     At the time of Plaintiffs' incident, Defendant Town and Country and/or Dan Winters and/or DR Winters had entered a written contract with Camp Raninu to inspect, repair, replace, correct, service and/or maintain water heaters propane distribution, including the main yard line.

DocuSign Envelope ID: F0F7CB5A-F543-4096-AF81-8771F55DE004

71. In the alternative, at the time of the incident, Defendant Town and Country and/or Dan Winters and/or DR Winters had entered a verbal contract with Camp Raninu to service inspect, repair, replace, correct, service and/or maintain water heaters and propane distribution, including the main yard line.

72. Upon information and belief, Defendant Town and County and/or Dan Winters and/or DR Winters has been inspecting, repairing, replacing, maintaining, and/or servicing the waters heaters, the entirety of the propane distribution, and the main yard line at Camp Raninu for at least five (5) years prior to Plaintiffs' incident.

73. As such, before Plaintiffs' incident, Defendant Town and Country and/or Dan Winters and/or DR Winters had been to Camp Raninu to inspect, repair, replace, correct, service and/or maintain issues with propane distribution, water heaters, and the main yard line on numerous occasions.

74. Defendant Town and Country and/or Dan Winters and/or DR Winters failed to inspect and/or conduct a leak test and chose not to fix issues concerning propane distribution, specifically as it related to Cabin #10 when they knew or should have known said issues would cause injury.

75. All of the acts herein alleged were done or not done by the Defendant's agents, workers, servants and/or employees of Defendant acting within the course and scope of their employment, agency, or authority for and on behalf of Defendant Town and Country.

76. Defendant Town and Country and/or Dan Winters and/or DR Winters knew or should have known, at least approximately (1) year prior to Plaintiffs' incident that there was an issue with propane distribution, that it was foreseeable that serious injury would occur, and that said issue and injuries were in relation to Cabin #10.

77.     Defendant Town and Country's and/or Dan Winters and/or DR Winters repeated acts in failing and choosing to ignore issues regarding propane distribution, including, but not limited to, water heaters, the main yard line, and Cabin #10, when they knew or should have known said acts were careless, negligent, and reckless, created a foreseeable risk that an explosion and serious injury would occur to persons, including Plaintiffs.

78.     Defendant Town and Country's and/or Dan Winters and/or DR Winters repeated acts in failing and choosing to ignore issues regarding propane distribution, including but not limited to, water heaters, the main yard line, and Cabin #10, were acts that were negligent, careless, and reckless and were of unreasonable character and in disregard of a risk that Defendant knew or should have known would create harm.

79.     Defendant Town and Country and/or Dan Winters and/or DR Winters willfully and wantonly disregarded the issue with propane distribution, including but not limited to, water heaters, the main yard line, and Cabin #10, knowing it was a risk to persons such as Plaintiffs.

80.     Defendant Town and Country's and/or Dan Winters and/or DR Winters acts in failing and choosing to ignore propane distribution issues, including but not limited to, water heaters, the main yard line, and Cabin #10, when they knew or should have known said acts were careless, negligent and reckless, is conduct that is outrageous as it was so obvious that such acts would create an unreasonable risk and harm would follow to persons, such as Plaintiffs.

81.     Defendant Town and Country's and/or Dan Winters and/or DR Winters acts in failing, and choosing to ignore propane distribution issues, when they knew or should have known said acts were careless, negligent, and reckless, created a reckless indifference to others such as Plaintiffs.

DocuSign Envelope ID: F0F7CB5A-F543-4096-AF81-8771F65DE004

82.    At all times relevant hereto, when Defendant Town and Country and/or Dan Winters and/or DR Winters was inspecting, repairing, replacing, correcting, servicing and/or maintaining, Defendant Town and Country and/or Dan Winters and/or DR Winters had sole or joint control over the propane distribution system, including the main yard line.

83.    Prior to Plaintiffs' incident, it was feasible for Defendant Town and Country and/or Dan Winters and/or DR Winters to conduct a leak test of the entire LP/propane system and subsequently disconnect service to the main yard line upon discovery of the LP/propane leak.

84.    All the acts alleged herein were done or omitted by Defendant Town and Country and/or Dan Winters and/or DR Winters, their agents, workers, employees and/or servants over which Defendant Town and Country had control.

85.    In the alternative, it is averred upon information and belief, that the second stage regulators manufactured by Defendants ECI and Engineered Controls were manufactured, fabricated, and/or assembled in such a manner that caused them to contain an undetermined leak source.

86.    It is averred upon information and belief that this undetermined leak source caused the second-stage regulators to be unable to properly control the flow of propane from the yard line and allowed for a release and dangerous build-up of propane gas which, when ignited, created a foreseeable risk of explosion that would seriously injure persons, including the Plaintiffs.

87.    In the alternative, it is averred upon information and belief that, the regulators manufactured by Defendant Honeywell that were installed onto the water heaters were

DocuSign Envelope ID: F0F7CB5A-F543-4096-AF81-8771F65DE004

manufactured, fabricated, and/or assembled in such a manner that caused them to contain an undetermined leak source.

88.     Upon information and belief, it is averred that these faulty regulators were then distributed to manufacturers of water heaters, including Defendants Rheem and Bradford White, and used in the final assembly of water heaters.

89.     Upon information and belief, it is averred that when combined with an operational water heater, these faulty regulators were unable to properly control the flow of propane gas into the water heater and allowed for a dangerous release of propane gas which, when ignited, created a foreseeable risk of explosion that would seriously injure persons, including the Plaintiffs.

90.     In the alternative, Defendant Rheem manufactured, fabricated, assembled and/or distributed the hot water heater, partial serial number A231812175, with a component, specifically the regulator manufactured by Defendant Honeywell, that they knew or should have known contained an undetermined leak source that would create a foreseeable risk of explosion that would seriously injure persons, including the Plaintiffs.

91.     In the alternative, Defendant Bradford White manufactured, fabricated, assembled and/or distributed the hot water heater, model number RG250T6X and serial number TD43295322, with a component, specifically a regulator manufactured by Defendant Honeywell, that they knew or should have known contained an undetermined leak source that would create a foreseeable risk of explosion that would seriously injure persons, including the Plaintiffs.

92.     Defendants Bradford White, Rheem, Engineered Controls, ECI and Honeywell knew or should have known prior to Plaintiffs' incident that there was an issue with propane distribution, that it was foreseeable that serious injury would occur, and that said issue and injuries were in relation to Cabin #10.

93.     Defendants Bradford White, Rheem, Engineered Controls, ECI and Honeywell's repeated acts in failing, and choosing to ignore issues regarding propane distribution, including but not limited to, water heaters and regulators, when they knew or should have known said acts were careless, negligent, and reckless, created a foreseeable risk that an explosion and serious injury would occur to persons, including Plaintiffs.

94.     Defendants Bradford White, Rheem, Engineered Controls, ECI and Honeywell's repeated acts in failing and choosing to ignore issues regarding propane distribution, water heaters and regulators were acts that were negligent, careless, and reckless and were of unreasonable character and in disregard of a risk that Defendants knew or should have known would create harm.

95.     Defendants Bradford White, Rheem, Engineered Controls, ECI and Honeywell willfully and wantonly disregarded the issue with propane distribution, including but not limited to, water heaters and regulators knowing it was a risk to persons such as Plaintiffs.

96.     Defendants Bradford White, Rheem, Engineered Controls, ECI and Honeywell, in failing and choosing to put into distribution for use water heaters when they knew or should have known said acts were careless, negligent, and reckless, is conduct that is outrageous as it was so obvious that such acts would create an unreasonable risk and harm would follow to persons, such as Plaintiffs.

97.     Defendants Bradford White, Rheem, Engineered Controls, ECI and Honeywell's acts in failing, and choosing to ignore propane distribution issues, when they knew or should have known said acts were careless, negligent, and reckless, created a reckless indifference to others such as Plaintiffs.

## COUNT I

## PLAINTIFFS, YEHUDA RUBIN AND NECHAMA SANDLER INDIVIDUALLY AND AS H/W v. DEFENDANT TOWN AND COUNTRY

## NEGLIGENCE

98.     Plaintiffs incorporates the above paragraphs as though the same were fully set forth herein at length.

99.     The negligence, recklessness and carelessness of Defendant Town and Country consisted of the following:

(a)     failing to warn Plaintiffs of a dangerous condition;

(b)     maintaining the water heaters and propane distribution, in such a manner as to constitute a dangerous condition to persons such as Plaintiffs;

(c)     failing to inspect water heaters and propane distributions;

(d)     failing to properly instruct workers regarding safety equipment, rules and regulations regarding water heaters and propane distribution;

(e)     failing to inspect the premises so as to discover the dangerous condition, including leaks in the propane distribution, that Defendant knew or should have known would cause an explosion;

(f)     failing to employ, train and retain personnel sufficiently qualified to perform inspections, repairs, replacements, corrections, services and/or maintenance of water heaters propane distribution;

(g)     failing to supervise the work properly;

(h)     performing and furnishing services in a negligent, careless, and reckless manner, specifically allowing a dangerous condition of water heaters and propane

DocuSign Envelope ID: F0F7CB5A-F543-4096-AF81-8771F55DE004

distribution to exist when Defendant knew or should have known that said condition would cause foreseeable harm to persons such as Plaintiffs;

(i) failing to and/or improperly training workman, servants, and employees as to recognize, inspect, repair, replace, correct, service and/or maintain issues with propane distribution, water heaters, and the main yard line;

(j) failing to perform leak tests each time an interruption of service occurred;

(k) violating industry standards, specifically NFPA 58 and ANSI Standards as it relates to inspecting, servicing, installing, and maintaining propane distribution;

(l) improperly inspecting, repairing, replacing, correcting, servicing and/or maintaining propane distribution and water heaters at Camp Raninu; and,

(m) failing to warn Plaintiffs of the dangerous condition that would cause an explosion.

100. As a result of the aforesaid, Plaintiff, Yehuda Rubin sustained injuries to his head, neck, back, body, limbs, bones, cells, nerves, tissues, muscles and functions, including but not limited to; being helicoptered from the scene to the hospital; second degree burns covering his face including his lips, eyebrows, eyes, and neck; second degree burns to his upper extremities and lower extremities; second degree burns to his torso and right and left ears; the need for oxygen due to saturation; debridement of the burns, disfigurement and scarring, some or all of which may be serious and may be permanent in nature.

101. As a result of the aforesaid, Plaintiff Nechama Sandler sustained injuries to her head, neck, back, body, limbs, cells, bones, nerves, tissue, muscles, and functions, including but not limited to: being helicoptered from the scene to the hospital; second degree burns on her right

arm and bilateral legs; debridement of the burns; disfigurement and scarring, some or all of which may be serious and permanent in nature.

102.    As a result of the aforesaid, the Plaintiffs have undergone great physical pain and mental anguish and they will continue to endure the same for an indefinite time in the future, to their great detriment and loss.

103.    As a result of the aforesaid, the Plaintiffs have been compelled to expend large sums of money for medicine and medical care and attention in and about an effort to effect a cure of their aforesaid injuries and will be compelled to continue to expend such sums for the same purposes for an indefinite time in the future, to their great detriment and loss.

104.    As a result of the aforesaid, the Plaintiffs have been unable to attend to their usual and daily duties and occupations, and they will be unable to attend to the same for an indefinite time in the future, to their great detriment and loss.

105.    As a further result of the aforesaid, Plaintiffs have suffered a loss and depreciation of their earnings and earning power, and they may continue to suffer same for an indefinite time in the future to their great detriment and loss.

WHEREFORE, Plaintiffs, Yehuda Rubin and Nechama Sandler, individually and as husband and wife, claim damages of Defendant Town and Country in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus punitive damages.

## <u>COUNT II – NEGLIGENCE</u>

## <u>PLAINTIFF, YEHUDA RUBIN AND NECHAMA SANDLER, INDIVIDUALLY AND AS H/W v. DR WINTERS GAS HEATING & APPLIANCE SERVICE</u>

106.    Plaintiffs incorporates the above paragraphs as though the same were fully set forth herein at length.

107.     The negligence, recklessness and carelessness of Defendant DR Winters consisted of the following:

(a)     failing to warn Plaintiffs of a dangerous condition;

(b)     maintaining the water heaters and propane distribution, in such a manner as to constitute a dangerous condition to persons such as Plaintiffs;

(c)     failing to inspect water heaters and propane distributions;

(d)     failing to properly instruct workers regarding safety equipment, rules and regulations regarding water heaters and propane distribution;

(e)     failing to inspect the premises so as to discover the dangerous condition, including leaks in the propane distribution, that Defendant knew or should have known would cause an explosion;

(f)     failing to employ, train and retain personnel sufficiently qualified to perform inspections, repairs, replacements, corrections, services and/or maintenance of water heaters propane distribution;

(g)     failing to supervise the work properly;

(h)     performing and furnishing services in a negligent, careless, and reckless manner, specifically allowing a dangerous condition of water heaters and propane distribution to exists when Defendant knew or should have known that said condition would cause foreseeable harm to persons such as Plaintiffs;

(i)     failing to and/or improperly training workman, servants, and employees as to recognize, inspect, repair, replace, correct, service and/or maintain issues with propane distribution, water heaters, and the main yard line;

(j)     failing to perform leak tests each time an interruption of service occurred;

(k)      violating industry standards, specifically NFPA 58 and ANSI Standards as it relates to inspecting, servicing, installing, and maintaining propane distribution;

(l)      improperly inspecting, repairing, replacing, correcting, servicing and/or maintaining propane distribution and water heaters at Camp Raninu; and,

(m)      failing to warn Plaintiffs of the dangerous condition that would cause an explosion.

108.    The negligence of Defendant DR Winters was a direct and proximate cause of all of the aforementioned injuries and damages sustained by the Plaintiffs.

WHEREFORE, Plaintiffs, Yehuda Rubin and Nechama Sandler, individually and as husband and wife, claim damages of Defendant DR Winters in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus punitive damages.

## COUNT III – NEGLIGENCE

### PLAINTIFFS, YEHUDA RUBIN AND NECHAMA SANDLER INDIVIDUALLY AND AS H/W v.  DAN WINTERS INDIVIDUALLY and d/b/a, a/k/a DAN WINTERS GAS HEATING AND APPLIANCE SERVICE

109.    Plaintiffs incorporates the above paragraphs as though the same were fully set forth herein at length.

110.    The negligence, recklessness and carelessness of Defendant Dan Winters individually and d/b/a, a/k/a Dan Winters Gas Heating and Appliance Service consisted of the following:

(a)      failing to warn Plaintiffs of a dangerous condition;

(b)      maintaining the water heaters and propane distribution, in such a manner as to constitute a dangerous condition to persons such as Plaintiffs;

(c)      failing to inspect water heaters and propane distributions;

(d)     failing to properly instruct workers regarding safety equipment, rules and regulations regarding water heaters and propane distribution;

(e)     failing to inspect the premises so as to discover the dangerous condition, including leaks in the propane distribution, that Defendant knew or should have known would cause an explosion;

(f)     failing to employ, train and retain personnel sufficiently qualified to perform inspections, repairs, replacements, corrections, services and/or maintenance of water heaters propane distribution;

(g)     failing to supervise the work properly;

(h)     performing and furnishing services in a negligent, careless, and reckless manner, specifically allowing a dangerous condition of water heaters and propane distribution to exists when Defendant knew or should have known that said condition would cause foreseeable harm to persons such as Plaintiffs;

(i)     failing to and/or improperly training workman, servants, and employees as to recognize, inspect, repair, replace, correct, service and/or maintain issues with propane distribution, water heaters, and the main yard line;

(j)     failing to perform leak tests each time an interruption of service occurred;

(k)     violating industry standards, specifically NFPA 58 and ANSI Standards as it relates to inspecting, servicing, installing, and maintaining propane distribution;

(l)     improperly inspecting, repairing, replacing, correcting, servicing and/or maintaining propane distribution and water heaters at Camp Raninu; and,

(m)     failing to warn Plaintiffs of the dangerous condition that would cause an explosion.

111.    The negligence of Defendant Dan Winters individually and d/b/a, a/k/a Dan Winters Gas Heating and Appliance was a direct and proximate cause of all of the aforementioned injuries and damages sustained by the Plaintiffs.

WHEREFORE, Plaintiffs, Yehuda Rubin and Nechama Sandler, individually and as husband and wife, claim damages of Defendant Dan Winters individually and d/b/a, a/k/a Dan Winters Gas Heating and Appliance Service in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus punitive damages.

## COUNT III – STRICT LIABILITY

### PLAINTIFFS, YEHUDA RUBIN AND NECHAMA SANDLER INDIVIDUALLY AND AS H/W v.  BRADFORD WHITE CORPORATION d/b/a, a/k/a BRADFORD WHITE WATER HEATERS

112.    Plaintiffs incorporates all of the above paragraphs as though fully set forth herein.

113.    At all times relevant herein, Plaintiff was using the subject water heater manufactured by Defendant Bradford White in both a proper and intended manner and was also an intended and foreseeable user of said water heater.

114.    The water heater reached its intended user without any unforeseeable modifications.

115.    The aforesaid incident and Plaintiffs' injuries and losses were caused by Defendant Bradford White's design, manufacturing, fabrication, assembly, inspection, marketing, distribution, selling, and/or supply of the water heater in a defective condition for which Defendant Bradford White is strictly liable to Plaintiffs.

116.    The subject water heater was defective because it was dangerous beyond the reasonable consumer's contemplation including that of Plaintiffs.

117. The subject water heater was defective because the ordinary consumer, including Plaintiffs, would not reasonably anticipate and appreciate the dangerous condition of the water heater and its attendant risk of injury.

118. The water heater was defective because the probability and seriousness of harm caused by the product outweighed the burden or costs of taking precautions.

WHEREFORE, Plaintiffs, Yehuda Rubin and Nechama Sandler, individually and as husband and wife, claim damages of Defendant Bradford White in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus punitive damages.

## COUNT IV – BREACH OF WARRANTY

### PLAINTIFFS, YEHUDA RUBIN AND NECHAMA SANDLER INDIVIDUALLY AND AS H/W v. BRADFORD WHITE CORPORATION d/b/a, a/k/a BRADFORD WHITE WATER HEATERS

119. Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

120. In designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling, and/or supplying the aforesaid water heater, Defendant Bradford White expressly warranted that the water heater was safe for its intended and foreseeable uses, and made other express warranties concerning the quality and characteristics of the water heater that had the natural tendency to induce consumers to purchase the water heater in question.

121. In designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling, and/or supplying the aforesaid water heater, Defendant Bradford White, impliedly warranted that it was of merchantable quality, was fit and safe for the ordinary purpose for which it was sold, and was free of all defects.

122. The aforesaid express and implied warranties were breached by Defendant Bradford White in that the water heater constituted a serious danger to the user and others, was not

safe for its intended or foreseeable uses, was not of merchantable quality, and was not fit and safe for the ordinary purpose for which it was sold and was not free from all defects.

123.    The breach of express and implied warranties by Defendant Bradford White, was a direct and proximate cause of the aforementioned injuries and damages suffered by the Plaintiffs.

WHEREFORE, Plaintiffs, Yehuda Rubin and Nechama Sandler, individually and as husband and wife, claim damages of Defendant Bradford White in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus punitive damages.

## COUNT V – STRICT LIABILITY

### PLAINTIFFS, YEHUDA RUBIN AND NECHAMA SANDLER INDIVIDUALLY AND AS H/W v. RHEEM MANUFACTURING COMPANY

124.    The Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

125.    At all times relevant herein, Plaintiff was using the subject water heater manufactured by Defendant Rheem in both a proper and intended manner and was also an intended and foreseeable user of said water heater.

126.    The water heater reached its intended user without any unforeseeable modifications.

127.    The aforesaid incident and Plaintiffs' injuries and losses were caused by Defendant Rheem's design, manufacturing, fabrication, assembly, inspection, marketing, distribution, selling, and/or supply of the water heater in a defective condition for which Defendant Bradford White is strictly liable to Plaintiff.

128.    The subject water heater was defective because it was dangerous beyond the reasonable consumer's contemplation including that of Plaintiffs.

129.    The subject water heater was defective because the ordinary consumer, including Plaintiffs, would not reasonably anticipate and appreciate the dangerous condition of the water heater and its attendant risk of injury.

130.    The water heater was defective because the probability and seriousness of harm caused by the product outweighed the burden or costs of taking precautions.

WHEREFORE, Plaintiffs, Yehuda Rubin and Nechama Sandler, individually and as husband and wife, claim damages of Defendant Rheem in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus punitive damages.

## COUNT VI – BREACH OF WARRANTY

### PLAINTIFFS, YEHUDA RUBIN AND NECHAMA SANDLER INDIVIDUALLY AND AS H/W v. RHEEM MANUFACTURING COMPANY

131.    Plaintiffs incorporate all of the above paragraphs as though fully set forth herein.

132.    In designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling, and/or supplying the aforesaid water heater, Defendant Rheem expressly warranted that the water heater was safe for its intended and foreseeable uses, and made other express warranties concerning the quality and characteristics of the water heater that had the natural tendency to induce consumers to purchase the water heater in question.

133.    In designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling, and/or supplying the aforesaid water heater, Defendant Rheem, impliedly warranted that it was of merchantable quality, was fit and safe for the ordinary purpose for which it was sold, and was free of all defects.

134.    The aforesaid express and implied warranties were breached by Defendant Rheem in that the water heater constituted a serious danger to the user and others, was not safe for its

DocuSign Envelope ID: F0F7CB5A-F543-4096-AF81-8771F65DE004

intended or foreseeable uses, was not of merchantable quality, and was not fit and safe for the ordinary purpose for which it was sold and was not free from all defects.

135.    The breach of express and implied warranties by Defendant Rheem, was a direct and proximate cause of the aforementioned injures and damages suffered by the Plaintiffs.

WHEREFORE, Plaintiffs, Yehuda Rubin and Nechama Sandler, individually and as husband and wife, claim damages of Defendant Rheem in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus punitive damages.

## COUNT VII – STRICT LIABILITY

### PLAINTIFFS, YEHUDA RUBIN AND NECHAMA SANDLER INDIVIDUALLY AND AS H/W v. HONEYWELL INTERNATIONAL, INC. d/b/a, a/k/a HONEYWELL; HONEYWELL, INC.

136.    The Plaintiffs incorporate all of the above paragraphs as though full set forth herein.

137.    At all relevant times herein, the regulators manufactured by Honeywell were being used in both a proper and intended manner and Plaintiff Yehuda Rubin was a foreseeable user of the regulator.

138.    The regulators reached their intended user without any unforeseeable modifications.

139.    The aforesaid incident and Plaintiffs' injuries and losses were caused by Defendant Honeywell's design, manufacturing, fabrication, assembly, inspection, marketing, distribution, selling, and/or supply of the regulators in a defective condition for which Defendant is strictly liable to Plaintiff.

140.    The subject regulators were defective because it was dangerous beyond the reasonable consumer's contemplation, including the Plaintiffs.

DocuSign Envelope ID: F0F7CB5A-F543-4096-AF81-8731F55DE004

141.     The subject regulators were defective because the ordinary consumer, including Plaintiffs, would not reasonably anticipate and appreciate the dangerous condition of the regulators and the attendant risk of injury.

142.     The regulators were defective because the probability and seriousness of harm caused by the product outweighed the burden or costs of taking precautions.

WHEREFORE, Plaintiffs, Yehuda Rubin and Nechama Sandler, individually and as husband and wife, claim damages of Defendant Honeywell in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus punitive damages.

## COUNT VIII – BREACH OF WARRANTY

### PLAINTIFFS, YEHUDA RUBIN AND NECHAMA SANDLER INDIVIDUALLY AND AS H/W v. HONEYWELL INTERNATIONAL, INC. d/b/a, a/k/a HONEYWELL; HONEYWELL, INC.

143.     The Plaintiffs incorporates all of the above paragraphs as though fully set forth herein.

144.     In designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling, and/or supplying the aforesaid regulators, Defendant Honeywell expressly warranted that the regulators were safe for its intended and foreseeable uses, and made other express warranties concerning the quality and characteristics of the regulators that had the natural tendency to induce consumers to purchase the regulators in question.

145.     In designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling, and/or supplying the aforesaid regulators, Defendant Honeywell, impliedly warranted that they were of merchantable quality, were fit and safe for the ordinary purpose for which they were sold, and were free of all defects.

DocuSign Envelope ID: F0F7CB5A-F543-4096-AF91-8771F55DE004

146.    The aforesaid express and implied warranties were breached by Defendant Honeywell in that the regulators constituted a serious danger to the user and others, were not safe for their intended or foreseeable uses, were not of merchantable quality, and were not fit and safe for the ordinary purpose for which they were sold and were not free from all defects.

147.    The breach of express and implied warranties by Defendant Honeywell, was a direct and proximate cause of the aforementioned injures and damages suffered by the Plaintiffs.

WHEREFORE, Plaintiffs, Yehuda Rubin and Nechama Sandler, individually and as husband and wife, claim damages of Defendant Honeywell in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus punitive damages.

## COUNT IX – STRICT LIABILITY

### PLAINTIFFS, YEHUDA RUBIN AND NECHAMA SANDLER INDIVIDUALLY AND AS H/W v. ENGINEERED CONTROLS INTERNATIONAL, INC. d/b/a, a/k/a ECII; ECIL REGO; REGO COMPANY; REGO PRODUCTS AND/OR REGO-GODDARD PRODUCTS
### &
### ENGINEERED CONTROLS LLC d/b/a, a/k/a ENGINEERED CONTROLS INTERNATIONAL, INC. ECII; ECIL REGO; REGO COMPANY; REGO PRODUCTS AND/OR REGO-GODDARD PRODUCTS

148.    The Plaintiffs incorporate all of the above paragraphs as though full set forth herein.

149.    At all relevant times herein, the second-stage regulator manufactured by Defendants ECI and Engineered Controls was being used in both a proper and intended manner and Plaintiff Yehuda Rubin was a foreseeable user of the second-stage regulator.

150.    The second-stage regulator reached its intended user without any unforeseeable modifications

151.    The aforesaid incident and Plaintiffs' injuries and losses were caused by Defendants ECI and Engineered Controls design, manufacturing, fabrication, assembly, inspection, marketing,

DocuSign Envelope ID: F0F7CB5A-F543-4096-AF81-8771F65DE004

distribution, selling, and/or supply of the second-stage regulator in a defective condition for which Defendant is strictly liable to Plaintiff.

152.    The subject second-stage regulator was defective because it was dangerous beyond the reasonable consumer's contemplation, including the Plaintiffs.

153.    The subject second-stage regulator was defective because the ordinary consumer, including Plaintiffs, would not reasonably anticipate and appreciate the dangerous condition of the second-stage regulator and its attendant risk of injury.

154.    The second-stage regulator was defective because the probability and seriousness of harm caused by the product outweighed the burden or costs of taking precautions.

WHEREFORE, Plaintiffs, Yehuda Rubin and Nechama Sandler, individually and as husband and wife, claim damages of Defendants ECI and Engineered Controls in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus punitive damages.

### COUNT X – BREACH OF WARRANTY

**PLAINTIFFS, YEHUDA RUBIN AND NECHAMA SANDLER
INDIVIDUALLY AND AS H/W v. ENGINEERED CONTROLS INTERNATIONAL,
INC. d/b/a, a/k/a ECII; ECIL REGO; REGO COMPANY; REGO PRODUCTS AND/OR
REGO-GODDARD PRODUCTS
&
ENGINEERED CONTROLS LLC d/b/a, a/k/a ENGINEERED CONTROLS
INTERNATIONAL, INC. ECII; ECIL REGO; REGO COMPANY; REGO PRODUCTS
AND/OR REGO-GODDARD PRODUCTS**

155.    Plaintiffs incorporates all of the above paragraphs as though fully set forth herein.

156.    In designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling, and/or supplying the aforesaid second-stage regulator, Defendants ECI and Engineered Controls expressly warranted that the second-stage regulator was safe for its intended and foreseeable uses, and made other express warranties concerning the quality and characteristics

of the second-stage regulator that had the natural tendency to induce consumers to purchase the second-stage regulators in question.

157.    In designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling, and/or supplying the aforesaid second-stage regulator, Defendants ECI and Engineered Controls, impliedly warranted that it was of merchantable quality, was fit and safe for the ordinary purpose for which it was sold, and was free of all defects.

158.    The aforesaid express and implied warranties were breached by Defendants ECI and Engineered Controls in that the second-stage regulator constituted a serious danger to the user and others, was not safe for its intended or foreseeable uses, was not of merchantable quality, was not fit and safe for the ordinary purpose for which it was sold and was not free from all defects.

159.    The breach of express and implied warranties by Defendants ECI and Engineered Controls, was a direct and proximate cause of the aforementioned injures and damages suffered by the Plaintiffs.

WHEREFORE, Plaintiffs, Yehuda Rubin and Nechama Sandler, individually and as husband and wife, claim damages of Defendants ECI and Engineered Controls in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus punitive damages.

## COUNT XI – LOSS OF CONSORTIUM

## PLAINTIFF, YEHUDA RUBIN v. ALL DEFENDANTS

160.    Plaintiffs incorporate the above paragraphs as though the same were fully set forth herein at length.

161.    Plaintiff, Yehuda Rubin at the time of this incident was, and also continues to be the husband of Nechama Sandler, Plaintiff above.

DocuSign Envelope ID: F0F7CB5A-F543-4096-AF81-8771F65DE004

162.    As a further result of the negligence, strict liability, and/or breach of warranty of the Defendants, Plaintiff, Yehuda Rubin, has been deprived of the love and consortium of his wife, Plaintiff, Nechama Sandler, for a great period of time and will be deprived of the same for an indefinite time in the future, all to his great detriment and loss for which he claims reimbursement.

WHEREFORE, Plaintiffs, Yehuda Rubin and Nechama Sandler, individually and as husband and wife, claim damages from all Defendants in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus punitive damages.

## COUNT XII – LOSS OF CONSORTIUM

## PLAINTIFF, NECHAMA SANDLER v. ALL DEFENDANTS

163.    Plaintiffs incorporate the above paragraphs as though the same were fully set forth herein at length.

164.    Plaintiff, Nechama Sandler at the time of this incident, was and continues to be, the wife of Yehuda Rubin, Plaintiff above.

165.    As a further result of the negligence, strict liability and/or breach of warranty by the Defendants, Plaintiff, Nechama Sandler has been deprived of the love and consortium of her husband, Plaintiff, Yehuda Rubin, for a great period of time and will be deprived of the same for an indefinite time in the future, all to her great detriment and loss for which she claims reimbursement.

WHEREFORE, Plaintiffs, Yehuda Rubin and Nechama Sandler, individually and as husband and wife, claim damages of Defendants, in an amount in excess of Seventy-Fifty Thousand ($75,000.00) Dollars plus punitive damages

DocuSign Envelope ID: F0F7CB5A-F543-4096-AF91-B771F66DE004

STARK & STARK, P.C.

Dated: _June 16, 2022_ _____      BY: _Carin O'Donnell_____

CARIN A. O'DONNELL, ESQUIRE
Attorney for Plaintiffs

VERIFICATION

I, YEHUDA RUBIN, verify that the statements made in the foregoing COMPLAINT are true and correct to the best of my knowledge, information, and belief.

I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsifications to authorities.

Dated: _____    June 16, 2022

DocuSigned by:

_____
47EB521EC9724EA...
YEHUDA RUBIN

DocuSign Envelope ID: C9112D01-D7C7-4474-9A57-B232BDF07F56

VERIFICATION

I, NECHAMA SANDLER, verify that the statements made in the foregoing

COMPLAINT are true and correct to the best of my knowledge, information, and belief.

I understand that false statements herein are made subject to the penalties of 18 Pa.

C.S.A. §4904 relating to unsworn falsifications to authorities.

Dated: _____  June 16, 2022

NECHAMA SANDLER

4881-0331-7284, v. 7